62 N.J. Super. 510 (1960)
163 A.2d 214
PETER MALAVASI, PLAINTIFF,
v.
ALFRED VILLAVECCHIA, INDIVIDUALLY AND TRADING AS A. VILLAVECCHIA & SONS, AND LINCOLN MANUFACTURING COMPANY, INCORPORATED, A MARYLAND CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 22, 1960.
*511 Mr. Abner A. Farber, attorney for plaintiff.
Mr. Ervin E. Field, attorney for defendant Alfred Villavecchia.
Messrs. Lamb, Langan & Blake, attorneys for defendant Lincoln Manufacturing Co., Inc. (Mr. John L. Milling, appearing).
ROSEN, J.C.C. (temporarily assigned).
This is an application by defendant Lincoln Manufacturing Company, Incorporated (hereinafter referred to as Lincoln), for an order dismissing the action, or in lieu thereof, to quash the return of summons on the ground that the said defendant is a Maryland corporation and is not subject to the jurisdiction of the courts of this State.
Plaintiff Peter Malavasi instituted this action in negligence against the moving party, defendant Lincoln, and *512 also against defendant Alfred Villavecchia, individually and trading as A. Villavecchia & Sons.
Plaintiff, who is an electrician, alleges that on August 4, 1958 he was repairing a light in the store of defendant Villavecchia, 1206 Summit Avenue, Union City, New Jersey, and in connection with the said work defendant Villavecchia supplied him with a ladder which was defective. Plaintiff contends defendant Villavecchia was negligent in supplying said ladder to him in that this defendant failed and neglected to warn plaintiff of the condition of the said ladder, represented to plaintiff that the ladder was new, and created an additional hazard by having the floor of the store premises waxed. Plaintiff further alleges the ladder was manufactured by Lincoln in a defective manner, that the ladder broke, and as a result plaintiff fell and suffered personal injuries.
Defendant Lincoln was served with summons and complaint on May 11, 1960 at its principal office, 70 West Main Street, Westminster, Maryland, by registered mail, return receipt requested, in accordance with R.R. 4:4-4(d). In support of its application, the affidavit of Lincoln's sales manager alleges that Lincoln is a corporation of the State of Maryland, and is not incorporated in or licensed to do business within the State of New Jersey; Lincoln does not maintain a district office within the State of New Jersey as an agent of said corporation in order to sell its products; it does not employ local distributors to promote or sell the products of its manufacture, or employ any agents or maintain any offices within this State; nor does it employ agents to sell its products within this State. Apparently Lincoln solicits the sale of its products outside of the State of Maryland by the use of commissioned representatives who are paid on a commission basis; said representatives are not employees or agents of Lincoln, and are not paid on a regular salary basis; Lincoln does not deduct Social Security payments from the commissions forwarded to them; said representatives do not maintain an office *513 within this State, and no offers made for the purchase of products manufactured by Lincoln are accepted within this State.
Plaintiff's affidavit answers Lincoln by stating the ladder which was used by him was manufactured by Lincoln and was purchased by defendant Villavecchia from Sears Roebuck & Co. in Union City, New Jersey, a short time prior to the alleged accident. The ladder bore a label on it having the designation "Lincoln Manufacturing Co., Inc." and "Tested by United States Testing Co., Inc." Subsequent to August 4, 1958 plaintiff purchased a similar ladder from Sears and the ladder bore the same type of label as previously described. Plaintiff has also visited the Sears store in Union City and saw ladders in the display rack which were similar to the one which caused his injuries. These ladders also bore the same label. Sears, in its catalogue, which is openly displayed on the counter in its store, has a description of the ladder which bears a catalogue number. The catalogue number, when checked with Sears records, disclosed the name "Lincoln Manufacturing Co., Inc., New Windsor, Maryland." The affidavit further states that during the latter part of 1958 Lincoln authorized United States Testing Co., Inc., of Hoboken, New Jersey, to perform a test of its ladders, and that the testing company had received payment for said tests from Lincoln. U.S. Testing Company never did approve the ladders manufactured by Lincoln.
Lincoln submitted an additional affidavit wherein it is stated that no payment was ever made for the placement of the advertisements of its products in the Sears catalogue. It admits that prior to the institution of this action it had occasion to request Sears, in its own behalf, to enlarge the advertisement of the Lincoln products in the catalogue, for which Lincoln would pay a consideration. This request was refused by Sears, as Sears exercises absolute control over the manner and presentation of advertisements in its catalogue.
*514 Apparently it is not disputed that Sears Roebuck and United States Testing Co., Inc., are either incorporated or are authorized to do business in the State of New Jersey.
At oral argument the court was informed that Lincoln was incorporated in New Jersey on November 7, 1946 and did business in New Jersey until February 26, 1952, when its charter was forfeited for nonpayment of taxes. Its registered agent and principal place of business was in West New York, New Jersey. The proclamation of the Governor which forfeited Lincoln's charter did not destroy Lincoln as a corporation but merely suspended it until it complied with the statute permitting it to be reinstated upon payment of delinquent taxes. It has been uniformly held that a reinstatement of a repealed charter relates back to the date of the proclamation of the repeal and validates corporate action in the interim. R.S. 54:11-2, 3, 5 to 8; J.B. Wolfe, Inc. v. Salkind, 3 N.J. 312 (1949).
The question to be decided is whether Lincoln was "doing business" within the State of New Jersey and amenable to service of process in this action.
In determining whether defendant was "doing business" in New Jersey a distinction must be made between the cases which deny a foreign corporation access to its courts and the cases which hold that a foreign corporation may be doing business within the State so as to be subject to the jurisdiction of its courts and amenable to service of process.
The distinction is well articulated in 23 Am. Jur., Foreign Corporations, § 362, pp. 339, 340:
"If the question relates to the right to subject a foreign corporation to the jurisdiction of the courts in the state through service of process, the point presented is different from the one presented where it relates to the power of the state to impose conditions, restrictions, or regulations upon the corporation's activities in the state. * * *
A foreign corporation may be doing business within the state so as to be subject to the jurisdiction of the local courts and amenable to service of process therein, and yet not be subject to a statute regulating foreign corporations or prescribing conditions *515 of their doing business within the state. The standards are not the same, and the quality, character, and quantity of business conducted within the state may be sufficient for the former purpose and insufficient for the latter."
In Westor Theatres v. Warner Bros. Pictures, 41 F. Supp. 757 (D.C.D.N.J. 1941), the court said:
"The courts in reaching decisions as to what shall constitute `ordinary business' and sufficient continuity to bring a corporation within the terms of a statute which imposes restrictions on the transaction of business by foreign corporations, are inclined to a narrow construction because severe penalties are frequently provided for non-compliance with the statutes which impose restrictions, but they have assigned a broad meaning to the term `ordinary business' and have adopted a narrow standard as to what volume of business transactions shall be necessary to bring it within the term `doing business' when a question of the sufficiency of process is raised. They have been influenced undoubtedly by the hardship which might result from a failure to uphold the jurisdiction, thus forcing a citizen of the state to resort to another sovereign."
As was said in International Text-Book Co. v. Tone, 220 N.Y. 313, 317; 115 N.E. 914, 915 (Ct. App. 1917), Cardozo, J.
"Business may be sufficient to subject the foreign corporation that does it to the service of process, and yet insufficient to require it to take out a license."
See also: International Harvester Co. v. Commonwealth of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479 (1913); Eli Lilly & Co. v. Sav-On Drugs, Inc., 57 N.J. Super. 291, 300 (App. Div. 1959), affirmed 31 N.J. 591 (1960).
The federal rule is clearly enunciated in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).
*516 Chief Justice Stone, speaking for the Supreme Court in International Shoe, said:
"* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.' * * *
Since the corporate personality is a fiction, although a fiction intended to be acted upon as though it were a fact, * * * it is clear that unlike an individual its `presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it. To say that the corporation is so far `present' there as to satisfy due process requirements, for purposes of taxation or the maintenance of suits against it in the courts of the state, is to beg the question to be decided. For the terms `present' or `presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. * * * Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there.
But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and so far as those obligations arise out of or are connected with the activities * * * which require the corporation to respond to a suit brought to enforce them, can, in most instances, hardly be said to be undue." (326 U.S., at pp. 316, 317, 66 S.Ct., at p. 158)
In International Shoe the facts were that a salesman of a Delaware corporation was in the State of Washington exhibiting samples of merchandise and soliciting orders from prospective buyers to be accepted or rejected by the corporation at a point outside the State of Washington. In holding that the foreign corporation was subject to the jurisdiction of the State of Washington for the purpose of taxation and suit, the court, after establishing the rule of minimum contacts, laid down a practical rule for its application based upon the nature of the corporation's general activity within the State,
*517 "Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in a large volume of interstate business." (326 U.S., at p. 320, 66 S.Ct., at p. 160)
Justice Black in McGee, reiterated the basic holding in International Shoe [355 U.S. 230, 78 S.Ct. 200]:
"Since Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned `consent,' `doing business,' and `presence' as the standard for measuring the extent of state judicial power over such corporations. See Henderson, The Position of Foreign Corporations in American Constitutional Law, C.V. More recently in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the Court decided that `due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice"' Id. 326 U.S., at p. 316, 66 S.Ct., at p. 158.
Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other non residents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."
In McGee the question involved was the jurisdiction of California over a Texas insurance company for the purpose of suit on a contract of insurance. The "sole contact" involved was this contract which had been accepted in California, delivered there, and the insurance premiums regularly mailed from that state. The court held sufficient *518 contact existed for California to exercise jurisdiction. Although the "systematic and continuous activity" of International was not present, the court nevertheless held:
"It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." (355 U.S., at p. 223, 78 S.Ct., at p. 201)
In Hanson v. Denckla, supra, the Florida probate court attempted to exercise personal jurisdiction over a Delaware trustee by means of constructive service by publication authorized by Florida statute. The trust had been created in Delaware of a corpus physically located therein by a resident of that state who had later become domiciled in Florida. There had been correspondence via mail between settlor and trustee. The settlor also exercised a power of appointment over the trustee while living in Florida. The court denied jurisdiction on these facts, finding that the "minimal contacts" required for jurisdiction did not exist, for:
"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (357 U.S., at p. 253, 78 S.Ct., at p. 1239)
Under the federal cases, the following observation has been made:
"There are three rules which can be drawn from a combined reading of International Shoe, McGee and Hanson against which all future litigation of a like nature may be tested. * * * The rules are:
(1) The nonresident defendant must do some act or consummate some transaction within the forum. It is not necessary that defendant's agent be physically within the forum, for this act or transaction may be by mail only. A single event will suffice if its *519 effects within the state are substantial enough to qualify under Rule Three.
(2) The cause of action must be one which arises out of, or results from, the activities of the defendant within the forum. It is conceivable that the actual cause of action might come to fruition in another state, but because of the activities of defendant in the forum state there would still be a `substantial minimum contact.'
(3) Having established by Rules One and Two a minimum contact between the defendant and the state, the assumption of jurisdiction based upon such contact must be consonant with the due process tenets of `fair play' and `substantial justice.' If this test is fulfilled, there exists a `substantial minimum contact' between the forum and the defendant. The reasonableness of subjecting the defendant to jurisdiction under this rule is frequently tested by standards analogous to those of forum non conveniens." 47 Georgetown L.J. 342, 351, 352 (1958).
In New Jersey Judge Goldmann, in Miklos v. Liberty Coach Co., 48 N.J. Super. 591 (App. Div. 1958), speaking for a unanimous court, followed the basic legal doctrines enunciated in International and McGee. In Miklos the foreign corporation (Liberty) sold its trailers in New Jersey through a dealer in said State. Liberty sent its crews into New Jersey to make repairs and replacements on trailers owned there. Liberty manufactured its trailers in the State of Indiana. It had no registered agent, registered office or sales office in New Jersey, and all sales were made in Indiana.
In holding that only minimum contacts with New Jersey are required, the court said:
"In any event, under the International Shoe and McGee cases liberty had sufficient minimum contacts with New Jersey so that it can be said that the maintenance of this suit does not offend `traditional notions of fair play and substantial justice.' These contacts made it reasonable to require Liberty to defend plaintiff's action. Cf. A & M Trading Corp. v. Pennsylvania R.R. Co., 13 N.J. 516 (1953); Daoud v. Kleven Investment Co., Inc., 30 N.J. Super. 38 (Ch. Div. 1954). There can be no question, in the words of Justice Black in the McGee Case, that `a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and their nonresidents,' in part `attributable to the fundamental transformation of our national economy over the years.' As was there observed, the increasing nationalization of commerce has brought with it a great *520 increase in the amount of business conducted across state lines, with modern transportation and communication at the same time making it much less burdensome for a party sued to defend himself in a state where he engages in economic activity."
While Lincoln is a corporation of the State of Maryland, its genesis was in the State of New Jersey. Lincoln has contact with Sears which is authorized to do business in this State. Lincoln had a substantial contact in this State when it entered into an agreement with United States Testing Co. for the purpose of obtaining its approval and seal so that the public would rely upon the reputation and integrity of the Testing Company; an approval which, incidentally, was never obtained although such a representation is inherent in the use of the designation "Lincoln Manufacturing Co., Inc." and "Tested by United States Testing Co., Inc." It is obvious that Lincoln used the seal of the Testing Company.
It is uncontradicted that the witnesses who will testify as to the defective condition of the ladder are in this State. Medical, hospital and expert witnesses are also in this State. Plaintiff and co-defendant Villavecchia would be required to expend large sums to produce these witnesses in Maryland. Both plaintiff and co-defendant Villavecchia urge this inconvenience as an additional reason to deny Lincoln's application. This position is well taken. An "estimate of the inconveniences" which would result in a trial in Maryland, when the cause of action arose in this State, is relevant. It is more desirable and practical to bring all the parties together in one suit and avoid a multiplicity of suits. It would be inconvenient and expensive to have plaintiff try one aspect of this case against co-defendant Villavecchia in New Jersey, and the other phase of the case against Lincoln in the State of Maryland. To permit Lincoln to prevail would constitute an unfair and onerous burden on plaintiff and co-defendant Villavecchia. In any event, under the authorities cited Lincoln had sufficient minimum contact with New Jersey so that the *521 maintenance of this suit would not offend "traditional notions of fair play and substantial justice." These contacts make it reasonable to require Lincoln to defend plaintiff's action.
Since the decision in Miklos, supra, R.R. 4:4-4(d) was amended to provide for service on a foreign corporation, subject to due process of law, by mailing, registered mail, return receipt requested, a copy of the summons and complaint to a registered agent for service, or to its principal place of business, or to its registered office.
Plaintiff has complied with the provisions of this rule. Lincoln is amenable to service of process in this State.
The motion is denied.