80 N.J. Super. 321 (1963)
193 A.2d 569
HELEN BERRY, FURMAN F. BERRY, BRENDA F. BERRY, AN INFANT BY HER GUARDIAN AD LITEM, HELEN BERRY, RUTH CONEY, AND EZEKIEL CONEY, PLAINTIFFS,
v.
THE PENNSYLVANIA RAILROAD COMPANY, A/K/A PENNSYLVANIA RAILROAD, A/K/A THE PENNSYLVANIA RAILROAD, A CORPORATION, SOUTHERN RAILWAY SYSTEM, A/K/A SOUTHERN RAILWAY COMPANY, A/K/A SOUTHERN RAILWAY, A CORPORATION OR BUSINESS ORGANIZATION, AND THE TRAVELERS INSURANCE COMPANY, A CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 28, 1963.
*323 Mr. Samuel E. Bass for plaintiffs (Mr. Sam Freeman, attorney).
Mr. Raymond W. Troy for defendant Pennsylvania Railroad Company (Messrs. Lum, Biunno & Tompkins, attorneys).
Mr. Thomas J. Brady for defendant Southern Railway Company (Messrs. Milton, Keane & DeBona, attorneys).
GIULIANO, J.S.C.
On February 26, 1963 defendant Pennsylvania Railroad Company, a/k/a Pennsylvania Railroad, a/k/a The Pennsylvania Railroad (Pennsylvania), filed a motion for summary judgment pursuant to R.R. 4:58. This motion was consolidated for the purposes of oral argument with a motion filed by defendant Southern Railway System, *324 a/k/a Southern Railway Company, a/k/a Southern Railway (Southern), to dismiss the action or in lieu thereof to quash the summons and return of service of summons upon the following grounds: (1) lack of jurisdiction over this defendant, (2) insufficiency of process, and (3) insufficiency of service of process.
The complaint which gave rise to this action was filed on December 19, 1962, alleging that plaintiffs Helen Berry, Brenda F. Berry and Ruth Coney became "passengers for hire upon the trains operated jointly and severally by mutual arrangements, joint venture and joint tariff, by and between the defendants, Pennsylvania and Southern." The plaintiffs had made reservations and purchased their tickets through a ticket agent employed by Pennsylvania at the Newark, N.J. terminal for round-trip passage to Ashburn, Georgia, on a train known as the Southerner. The accident involved occurred on December 22, 1960 while plaintiffs were alighting from the train in the Ashburn station.
Plaintiffs seek judgment for damages against Pennsylvania and Southern, jointly and severally, based on defendants' failure to carry out their undertaking to transport them to their destination safely and using due care. Plaintiffs contend further that both defendants were negligent in that they (1) failed to provide a proper station at the plaintiffs' destination at Ashburn, Georgia; (2) failed to bring the train in which they were passengers to a proper stop; (3) failed to give them proper assistance in leaving the train; and (4) caused them to alight from the train unsafely, and that as the result of the defendants' negligence plaintiffs suffered injuries.
In the affidavits of Helen Berry, Ruth Coney and Marie Rogers submitted on behalf of plaintiffs in opposition to this motion, they state that they understood that their trip "was through both the Pennsylvania and the Southern railways on a train called the `Southerner,'" and that it was their understanding that both the Pennsylvania and the Southern railroads would be responsible for their safety and safe travel from Newark to Ashburn.
*325 In its answer to plaintiffs' complaint Pennsylvania denies any negligent act of omission or commission and it further denies that it operated any of its trains in the State of Georgia. However, Pennsylvania admits that it was a common carrier engaged in the operation of a railroad for transportation of passengers for hire in the State of New Jersey and in various states throughout the United States at the time and place mentioned in the complaint.
In its answers to plaintiffs' demand for admission Pennsylvania admitted that it was engaged in selling railroad transportation to Ashburn, Georgia, from Newark, New Jersey, including transportation over the lines of Southern. This admission was qualified, however, by the statement that Pennsylvania was engaged in this activity "only as provided by the applicable tariff which was in effect as of the date of the particular sale."
In support of its motion for summary judgment Pennsylvania filed affidavits executed by James A. Foshee, the superintendent of transportation of the Pennsylvania, New York region, and John Wyatt, ticket agent of the Pennsylvania at Newark.
In his affidavit Foshee stated that Pennsylvania did not on December 22, 1960, and does not now, operate, own or maintain a railroad, station or any trackage south of Washington, D.C. In addition, he stated that passenger trains and other trains originating north of Washington pass entirely beyond the control of Pennsylvania when the trains proceed south of Washington. Since the plaintiffs' destination was Ashburn, Georgia, the control of the train would be turned over to Southern before it reached the latter point.
In his affidavit Wyatt stated that either of the following legends would have appeared on any ticket which the plaintiffs might have purchased from Pennsylvania at its Newark station for transportation from Newark to Ashburn, Georgia:
"Subject to tariffs. Selling carrier is agent only  not responsible beyond its line, except as law imposes liability for baggage. Nontransferable." (Emphasis added)
*326 Or
"In selling this book ticket and checking baggage herein, the selling carrier acts only as agent, and is not responsible beyond its own line, except as such responsibility may be imposed by law with respect to baggage." (Emphasis added)
During oral argument counsel for Pennsylvania stated that The Pennsylvania Railroad Company Joint Passenger Tariff I.C.C. No. A-24755, effective June 20, 1959 (I.C.C. No. A-24755), was in effect on December 21 and December 22, 1960. The provisions relied on by counsel are contained in section 1, paragraph 2, of the tariff under the caption of "Responsibility" namely:
"In issuing tickets and checking baggage for passage over the lines of the participating carriers, the issuing carrier acts only as agent and is not responsible beyond its own lines, except as such responsibility may be imposed by law regarding baggage." (Emphasis added)
In support of its motion addressed to the court's lack of jurisdiction, Southern filed affidavits executed by Wiley F. Mitchell, Jr., a general attorney employed by Southern, Wyatt and Robert S. Greer.
Wyatt stated that he is employed by Pennsylvania as ticket agent in its Newark station and that on January 2, 1963 "a process server left with me two summonses and complaints." The summonses named the Pennsylvania and Southern as defendants, and the return of service thereof read: "upon the Pennsylvania Railroad Station, Station Master, Newark, New Jersey." Wyatt stated further that he was neither an employee of Southern nor authorized by Southern as an agent for service of process or authorized to accept service of process on January 2, 1963.
In his affidavit Mitchell states substantially the following:
1. On February 12, 1963 he received a copy of the summons and complaint in the instant case, together with a covering letter, from the Sheriff of Essex County, New Jersey, by registered mail, return receipt requested.
*327 2. The title "Southern Railway System" is a descriptive name and not the name of a corporation or legal entity. It is not subject to suit as a legal entity but is only the name of an association composed of a large number of railroad companies.
3. The Southern Railway Company owns no tracks in New Jersey, carries on no business in New Jersey, and maintains no office for the solicitation of business in New Jersey. It has no bank accounts in New Jersey and issues no bills of lading in New Jersey.
The covering letter from the sheriff referred to in allegation 1 above was attached to Mitchell's affidavit as Exhibit "A." The letter was dated February 8, 1963, addressed to "Southern Railway Company, a/k/a Southern Railway System, a/k/a Southern Railway, 120 Terminal Station, Macon, Georgia," and a carbon copy was mailed return receipt requested to Southern at its address, 15th & K St. N.W., Southern Railway Building, Washington, D.C.
The second paragraph of the February 8, 1963 letter stated "Service of the within Summons and Complaint made in accordance with the rules of our Court."
Greer in his affidavit confirmed the representations contained in the affidavit of Mitchell, and in addition stated that neither he nor any other person "is authorized to enter into any contract on behalf of the Southern Railway Company in the State of New Jersey." Mr. Greer stated further that Southern Railway Company is a corporation incorporated under the laws of Virginia and has its principal office for purposes of operation in Washington, D.C., but that it also maintains a corporate office in Richmond, Virginia.
During oral argument counsel for the Southern admitted that railroad cars owned by Southern carry freight into and out of the State of New Jersey, and that passengers and freight solicited in New Jersey are carried over its lines in railroad cars owned and operated by it.
On the date of oral argument of the respective motions the court granted Southern's motion to dismiss the complaint as to Southern Railway System in view of the fact that it appeared *328 from the moving papers that it did not constitute a legal entity but was only a descriptive name. On all other matters the court reserved its decision.
The court will first address itself to the questions presented by Pennsylvania's motion for summary judgment. In deciding this motion, the issue is squarely whether the Pennsylvania owed any duty to the plaintiffs after the train in which they were riding passed beyond its own line at a point south of Washington, D.C.
In support of its contention that its "liability to plaintiffs did not extend beyond its own line" in the instant case, the Pennsylvania relies on (1) the legend inscribed on the tickets purchased by the plaintiffs; (2) the provisions of § 1, par. 2, I.C.C. No. A-24755, and (3) decisions of United States Supreme Court.
The court will comment briefly on the question as to what legal effect should be attributed to the exculpatory legend printed on the tickets which were sold to the plaintiffs. It is uniformly recognized, and the law of this State is well settled, that a carrier cannot absolve itself from its responsibility to its passengers by merely inserting an exculpatory clause on tickets which it offers for sale. See Horelick v. Pennsylvania R. Co., 13 N.J. 349 (1953); Sheridan v. New Jersey & N.Y.R.R. Co., 104 N.J.L. 622 (E. & A. 1928); Paul v. Pennsylvania R.R. Co., 70 N.J.L. 442 (Sup. Ct. 1904); New York Central R.R. Co. v. Lockwood, 17 Wall. 357, 84 U.S. 357, 21 L.Ed. 627 (1872); Sante Fe P. & P.R. Co. v. Grant Bros. Constr. Co., 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787 (1931). In Horelick, the court enunciated the following rule:
"For negligent failure to discharge such responsibility to its passengers, the Pennsylvania would seemingly be accountable even if the tickets issued by it had contained express provision to the contrary. Both federal and state decisions uniformly recognize that it is against public policy for a carrier to stipulate for exemption of liability in the event its negligence results in injury to its passengers." (13 N.J., at p. 357)
*329 Having disposed of the initial question, the court will now discuss those issues raised with respect to the provisions contained in § 1, par. 2, I.C.C. No. A-24755, filed with the Interstate Commerce Commission. The questions presented in this regard are novel.
Pennsylvania urged in its brief and during oral argument that by virtue of paragraph 2 contained in section 1 (the text of which is set forth, supra), its responsibility in the instant case did not extend beyond its own lines, i.e., south of Washington, D.C. In support of this contention it relies on Louisville & Nashville R.R. v. Chatters, 279 U.S. 320, 49 S.Ct. 329, 73 L.Ed. 711 (1929); Missouri Pacific R.R. Co. v. Prude, 265 U.S. 99, 44 S.Ct. 450, 68 L.Ed. 919 (1924); American Express Co. v. U.S. Horseshoe Co., 244 U.S. 58, 37 S.Ct. 595, 61 L.Ed. 990 (1917); Louisville & Nashville R.R. Co. v. Maxwell, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915); Kansas City Southern Ry. v. Carl, 227 U.S. 639, 33 S.Ct. 391, 57 L.Ed. 683 (1912); Chicago & Alton R.R. Co. v. Kirby, 225 U.S. 155, 32 S.Ct. 648, 56 L.Ed. 1033 (1912). The court must disagree with the argument urged by Pennsylvania in this respect. The court has reviewed Title 49 of the U.S.C.A. (Interstate Commerce Act) in its entirety, paying special attention to section 6(1) and concludes that the statute does not vest jurisdiction or authority in the Interstate Commerce Commission to promulgate or approve of exculpatory provisions similar to the one involved in this case.
Section 6(1) of the Interstate Commerce Act (49 U.S.C.A. 6 (1)), entitled "Schedule of rates, fares, and charges; filing and posting," requires every common carrier (which includes Pennsylvania) to file rates for passage over its line and the lines of its connecting carriers. That section provides, inter alia:
"Every common carrier subject to the provisions of this chapter shall file with the Commission created by this chapter and print and keep open to public inspection schedules showing all the rates, fares, and charges for transportation between different points on its own *330 route and between points on its own route and points on the route of any other carrier by railroad, by pipe line, or by water when a through route and joint rate have been established. If no joint rate over the through route has been established, the several carriers in such through route shall file, print and keep open to public inspection as aforesaid, the separately established rates, fares and charges applied to the through transportation. The schedules printed as aforesaid by any such common carrier shall plainly state the places between which property and passengers will be carried, and shall contain the classification of freight in force, and shall also state separately all terminal charges, storage charges, icing charges, and all other charges which the Commission may require, all privileges or facilities granted or allowed, and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates, fares, and charges, or the value of the service rendered to the passenger, shipper, or consignee. * * *"
It is apparent that 49 U.S.C.A. 6(1) deals solely with the filing of rates, fares and charges, and vests no authority for provisions contained in a tariff filed which would absolve the Pennsylvania from its common law responsibilities. Apparently Justice Jacobs reached a similar conclusion by way of dictum in the Horelick case, supra:
"Nothing in the pertinent federal legislation suggests authority in the Interstate Commerce Commission to authorize such a stipulation. Cf. Chicago, R.I. & P.R. Co. v. Maucher, 248 U.S. 359, 39 S.Ct. 108, 63 L.Ed. 294 (1919); Pacific S.S. Co. v. Cackette, 8 F.2d 259, 261 (9 Cir. 1925), certiorari denied 269 U.S. 586, 46 S.Ct. 203, 70 L.Ed. 426 (1926); Joseph Toker Co., Inc. v. Lehigh Valley R.R. Co., 12 N.J. 608 (1953)." (at p. 358)
See also Crowell v. Eastern Air Lines, 240 N.C. 20, 81 S.E.2d 178 (Sup. Ct. 1954).
In addition, § 1, par. 2 of I.C.C. No. A-24755 appears to be inconsistent with the intent of Congress in enacting the Interstate Commerce Act in that § 20(11), entitled "Liability of initial and delivering carrier for loss; limitation of liability; notice and filing of claim," in general renders the initial carrier liable not only for damage to property while the property is in its possession, but also for damage occasioned while it is in the control of any connecting carrier.
*331 Pennsylvania in its brief cites Louisville & Nashville R.R. Co. v. Maxwell, American Express Co. v. U.S. Horseshoe Co., Kansas City Southern Ry. v. Carl, and Chicago & Alton R.R. Co. v. Kirby, supra, in support of its contention that the plaintiff passengers are bound by stipulation contained in § 1, par. 2, I.C.C. No. A-24755, regardless of their knowledge of its provisions, and regardless of whether the tariff was posted, as long as it had been filed with the Interstate Commerce Commission.
A reading of the authorities cited by Pennsylvania in this respect discloses that none of the cases involve personal injury sustained by a passenger who purchased passage, as was the situation in the case sub judice. Rather, those cases involved disputes as to rates charged or damage done to property during shipment. Therefore, the cases cited by Pennsylvania are not applicable here.
In Pacific S.S. Co. v. Cackette, 8 F.2d 259 (9 Cir. 1925), the court, interpreting Boston & Maine R. Co. v. Hooker, 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868 (1925), stated:
"* * * is that a passenger or shipper is not chargeable with notice of any regulation filed and published which is not contemplated or required by the Interstate Commerce Act or amendments thereto. * * * No provision is found in the Interstate Commerce Act which relates to rights of action against carriers for damages or injuries sustained from negligence or assault." (at p. 261)
See also Southern Pacific Co. v. United States, 272 U.S. 445, 47 S.Ct. 123, 124, 71 L.Ed. 343 (1926).
In addition, § 1, par. 2, I.C.C. No. A-24755, unequivocally limits the "responsibility" of a carrier issuing a ticket in language which is so general and vague that it would appear to be incapable of proper construction and interpretation. It is disconcerting to this court that the participating carriers in I.C.C. No. A-24755 seek to limit their liability for personal injuries sustained by passengers traveling over their respective lines, which liability might otherwise accrue, by the mere filing of a tariff, the terms of which are arrived at by mutual agreement for the mutual benefit of all of the parties thereto.
*332 To argue that by virtue of the provisions contained in § 1, par. 2, I.C.C. No. A-24755, the railroads who solicit citizens of this State for passage over their lines can shut their eyes to the treatment, condition and facilities which they might be exposed to in their traveling over connecting lines, is not only ridiculous in this day and age, but is against the public policy of this State. Pennsylvania is a utility endowed with a franchise. Clearly, the tariff provision relied on here is not compatible with the public nature of its business.
It is the considered opinion of this court that the provisions of § 1, par. 2, I.C.C. No. A-24755, should be given no greater effect than a legend inscribed on a ticket purchased by a passenger, and it therefore has no legal effect on the responsibility which Pennsylvania owed to the plaintiffs in the instant case.
Having discussed the issues raised by exculpatory provisions inscribed on the tickets and inserted in the tariff, the court will now determine whether under the facts of this case the duty of Pennsylvania to the plaintiffs terminated at the end of its own line as a matter of law. Pennsylvania urges that its liability to the plaintiffs did not extend beyond its own line, and relies on decisions typified by Louisville & Nashville R.R. v. Chatters, supra. See also Missouri Pacific R.R. Co. v. Prude, supra; Pennsylvania R.R. Co. v. Jones, 155 U.S. 333, 15 S.Ct. 136, 39 L.Ed. 176 (1894); Myrick v. Michigan Central R.R. Co., 107 U.S. 102, 1 S.Ct. 425, 27 L.Ed. 325 (1882).
In resolving this question, this court realizes that the problem facing the plaintiffs in the instant case is one which concerns not only them, but also any passenger who boards a train at the station of one carrier with a destination situated on the lines of a connecting carrier in a distant state. However, after reviewing the cases in this area decided by the United States Supreme Court, the various federal courts and the courts of this State, this court concludes that the dictum contained in the opinion of our Supreme Court in Horelick v. Pennsylvania R. Co., supra, read in conjunction with the decision *333 of the United States Supreme Court in Louisville & Nashville R.R. v. Chatters, supra, is the law of this State.
In deciding Horelick, the court distinguished that case from the Chatters case, supra, on the facts presented. However, in so doing, it apparently approved of the holding in Chatters on its underlying facts. Therefore, this court concludes that the holding in Chatters is still considered to be the law of this State.
In Chatters, Justice Stone said:
"But there was no basis, either in pleading or proof, for a joint liability of both petitioners for the negligence of one. Neither of them, as a common carrier, was under any duty, either by the common law or statute, to transport or assume any responsibility for the transportation of respondent beyond its own line." (279 U.S., at p. 330, 49 S.Ct., at p. 332)
Since the facts in Chatters are closely analogous to the facts in the instant case, this court deems the holding in Chatters to be controlling here, and therefore dispositive of Pennsylvania's motion for summary judgment. But see Pacific R.R. Co. v. Prude, supra; Pennsylvania Co. v. Roy, 102 U.S. 451, 26 L.Ed. 141 (1880); Little v. Duzenberry, 46 N.J.L. 614 (E. & A. 1884). For the reasons stated above, Pennsylvania's motion for summary judgment is granted.
Having disposed of Pennsylvania's motion for summary judgment, the court will address itself to the questions presented by Southern's motion to dismiss. As stated above, plaintiffs attempted to make service upon Southern by two methods: (1) by leaving a copy of the summons and complaint with Wyatt, the ticket agent employed by Pennsylvania in its Newark office on January 2, 1963, and (2) by mailing a copy of the summons and complaint with a covering letter mailed return receipt requested addressed to Southern, dated February 8, 1963.
Plaintiffs contend that they have effected valid service of process in the manners set forth above in accordance with R.R. 4:4-4(d), which provides as follows:
*334 "Upon a domestic or foreign corporation, by serving, in the manner prescribed in paragraph (a), an officer, director, trustee or a managing or general agent; or if service cannot be made upon any of the foregoing and if there is no office or place of business within this State, by serving any servant of the corporation within this State acting in the discharge of his duties; or by delivering a copy of the summons and complaint to any person authorized by appointment or by law to receive service of process on behalf of the corporation; or by leaving a copy of the same at the registered office of the corporation with any person in charge thereof; or, if service cannot be made upon any of the foregoing and the corporation is a foreign corporation, then, subject to due process of law, by mailing, registered mail return receipt requested, a copy of the summons and complaint to a registered agent for service, or to its principal place of business, or to its registered office." (Emphasis added)
Southern argues that neither method of service was validly effected. Southern bases its argument on the following grounds: (1) Wyatt was employed as a ticket agent by Pennsylvania and was not authorized to accept service of process on behalf of Southern; (2) service under R.R. 4:4-4(d) is explicitly subject to the requirements of due process of law, and the requisite and indispensable contact between Southern and the State of New Jersey was lacking at the time service was made.
The court is cognizant of the fact that R.R. 4:4-4(d) requires that before a foreign corporation can be served with process by registered mail, return receipt requested, all other methods of service must be exhausted. However, the dispute in the instant case was concentrated by the parties in their briefs and by oral argument on the question of the validity of the service effected by registered mail, and not on the question of service upon the ticket agent of Pennsylvania. Therefore, this opinion will deal chiefly with the validity of the service by the former method.
Before proceeding to a discussion of the sine qua non for valid service by registered mail, return receipt requested, the court will comment briefly on the validity of the service made by leaving a copy of the summons and complaint with the ticket agent employed by the Pennsylvania.
*335 In this connection it should be noted that § 1, par. 2 of I.C.C. No. A-24755, relied upon by Pennsylvania in support of its motion for summary judgment, states that "the issuing carrier acts only as agent." The reasonable inference to be drawn from this phrase is that Pennsylvania is authorized by the participating carriers, among which Southern is included, to act as agent in the solicitation of residents of this State for passage over their lines.
In addition, in Scholnik v. National Airlines, 219 F.2d 115 (6 Cir. 1955), the court, in discussing section 11290 of the Ohio General Code, stated:
"* * * It is not required under either the Federal or State provisions that the agent served be the general agent or the general manager of the defendant's business in this state. It is sufficient if he is `a managing' agent. Based upon our ruling that National was doing business in Ohio by reason of its relations with Capital, delivery of process to the District Sales Manager of Capital was a valid service. [Citing cases]" (219 F.2d, at p. 120)
This language is similar to that used in R.R. 4:4-4(d) in this respect.
The court will now address itself to the final question  whether there was sufficient contact between Southern and this State to satisfy the requirement of due process of law.
Historically, due process required the presence of the defendant within the territorial jurisdiction of the court. Pennoyer v. Neff, 5 Ott. 714, 95 U.S. 714, 24 L.Ed. 565 (1887). Since Pennoyer the United States Supreme Court, the lower federal courts, and the courts of this State have written numerous opinions which have made the strict rule enunciated in the earlier cases more flexible. International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1941); Travelers Health Ass'n v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Scholnik v. National Airlines, supra; Lasky v. Norfolk & W. Ry. Co., *336 157 F.2d 674 (6 Cir. 1946); Whalen v. Young, 15 N.J. 321 (1954); Miklos v. Liberty Coach Co., 48 N.J. Super. 591 (App. Div. 1958); Malavasi v. Villavecchia, 62 N.J. Super. 510 (Law Div. 1960); Dowd v. Boro Drug Inc., 70 N.J. Super. 488 (App. Div. 1961); Hoagland v. Springer, 74 N.J. Super. 275 (Law Div. 1962) affirmed 75 N.J. Super. 560 (App. Div. 1962). The present general rule which evolved out of these decisions requires only that there exist certain minimum contacts between the defendant and the state of the forum and that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.
True, it has been iterated and reiterated that the presence of "certain minimum contacts" within the state of the forum subjects a defendant to the jurisdiction of the courts of that state, but query: What type of activity is required to constitute "certain minimum contact" within the contemplation of the prior decisions?
A review of the cases and authorities indicates that the standard to be used by the courts in determining whether the activities engaged in are such as would justify the subjection of a foreign corporation to suit is not made up simply of mechanical or quantitative criteria. Rather, the test to be applied depends upon the quality and nature of the activity in relation to the fair and orderly administration of the laws.
The facts in Scholnik v. National Airlines, supra, are closely analogous to the facts which gave rise to this case. In Scholnik there was a leasing agreement between National Airlines, Inc., a Florida corporation, and Capital Airlines, Inc., a Delaware corporation, which was filed with the Civil Aeronautics Board and became effective only on approval by that board. This lease had the same practical effect as the tariff arrangement filed with the Interstate Commerce Commission in the instant case  the solicitation of residents of the state of the forum for transportation or carriage over the lines of the foreign corporation and to collect payment therefor.
*337 In reaching its determination the court in Scholnik said:
"Even though the actual cost of such service may not be charged directly or indirectly to National in the mutual accounting provided by the Lease, compensation for such agency services would be found in the performance of similar services for Capital by National in National's southern offices. Such activities on behalf of National, coupled with operations under the Lease, with resulting benefits to National, carried on continuously over a period of years as a regular part of National's business, in our opinion furnish the necessary minimum contacts with the Ohio forum so that the maintenance of a suit against it in that forum does not offend `"traditional notions of fair play and substantial justice."'" (219 F.2d, at p. 119)
In analyzing this and applying it to the instant case, it is interesting to note that National Airlines, like defendant Southern, has no lines located in the State of Ohio, nor did it make contracts, issue bills of lading, or sell tickets within that state. Nevertheless, the court concluded that National Airlines was doing business within the jurisdiction of the court and was subject to its process by reason of the extensive and continuous solicitation of business by it in the district.
In Lasky v. Norfolk & W. Ry. Co., supra, the court, referring to the language used by Chief Justice Stone in International Shoe Company v. State of Washington, supra, said:
"* * * the `presence' of a corporation without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it; * * *." (157 F.2d, at p. 275)
Certainly, it cannot be realistically contended by Southern that Pennsylvania was not authorized to solicit business on behalf of Southern in the State of New Jersey. Therefore, under the reasoning of Lasky, the solicitation of passengers constitutes activity on the part of Southern, for the purposes of the pending motion.
The decisions of the courts of this State have consistently been in accord with the holdings of the federal courts with respect to the theory of minimum contact.
*338 In Hoagland v. Springer, supra, the most recent case decided by our courts, both the Law Division and the Appellate Division of the Superior Court decided the case on the theory of "sufficient continuous contact" within the State of New Jersey for the purpose of receiving the "fruits" of that contact.
Based on the reasoning set forth above, this court concludes that Southern had sufficient "minimum contact" within the State of New Jersey to subject it, in personam, to the jurisdiction of the courts of this State. Therefore, the service upon Southern effected pursuant to R.R. 4:4-4(d) is valid. This court denies Southern's motion and refuses to grant the relief sought in its moving papers.
Appropriate orders may be submitted in accordance with the text of this opinion.