194 A.2d 651 (1963)
Lucille BYRD and James D. Byrd, Appellants,
v.
NORFOLK AND WESTERN RAILWAY COMPANY, Appellee.
No. 3312.
District of Columbia Court of Appeals.
Argued September 16, 1963.
Decided November 4, 1963.
Henry H. Brylawski, Washington, D. C., for appellants.
Benjamin W. Dulany, Washington, D. C., with whom Daniel Webster Coon, Washington, D. C., was on the brief, for appellee.
Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.
QUINN, Associate Judge.
This is an appeal from an order quashing service of process on appellee. Suit was originally brought against both appellee and Southern Railway System, but subsequent to the filing of this appeal the suit against Southern Railway was dismissed without prejudice.
The facts are as follows. Mrs. Byrd, a resident of West Hyattsville, Maryland, purchased a round-trip ticket between Washington and Chattanooga, Tennessee, from a Southern Railway ticket office in the District of Columbia. On the return trip she boarded Southern Railway Train No. 18, the Birmingham Special, at Chattanooga. At some point between Bristol and Roanoke, Virginia, a sudden and unexpected lurching of the train caused her to be thrown and injured. She claimed that when the accident occurred the train was being operated by appellee's employees over a portion of appellee's tracks. Appellants demanded damages alleging negligence on the part of both Southern Railway and appellee.
Service on appellee was effected by serving F. Porter Blanchard, appellee's General Agent in the District of Columbia. Appellee filed a motion to quash, supported by Blanchard's affidavit, on the ground that appellee was not "doing business" in the District of Columbia.[1] In his affidavit, *652 Blanchard stated that appellee is a Virginia corporation with its principal offices at Roanoke; that its tracks are located outside of the District of Columbia and that none of its trains enter or touch upon the District of Columbia. He further stated that appellee maintains an office in the District of Columbia staffed by a General Agent and one clerk-stenographer, which office is listed in the Washington telephone directory; that the office is maintained solely for the solicitation of freight and passenger traffic, for the dissemination of information, for receiving papers served by the Interstate Commerce Commission, and for keeping appellee advised of rulings by the Interstate Commerce Commission and other government agencies. On occasion the office also traces shipments and transmits shippers' instructions.
In opposition to appellee's motion, appellants' counsel introduced two affidavits. The first of these stated that one of appellee's claims adjusters visited appellants' counsel at his office in the District of Columbia for the purpose of discussing the issues in the case at bar.[2] The second sought to establish additional contacts between appellee and the District of Columbia. It asserted that Mrs. Byrd's ticket, purchased in the District of Columbia, contained a stub for the portion of her trip between Lynchburg and Bristol, Virginia; that between these two cities the train was under the control of appellee; that appellee's cars, Pullmans and dining cars are serviced in the District of Columbia; and that Southern Train No. 41, which operates daily in the District of Columbia, has a sleeping car owned by appellee for the exclusive use of appellee's passengers disembarking between Lynchburg and Bristol. None of these assertions were disputed by appellee.[3]
The question presented is whether appellee has such "minimum contacts" with the District of Columbia that "the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, Etc., 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). We recently had occasion to consider a similar question in Key v. S. C. Johnson & Son, Inc., D.C.App., 189 A.2d 361 (1963). There we quoted extensively from the International Shoe opinion and concluded that the test is one of "practicality, reasonableness and fairness." Key v. S. C. Johnson & Son, Inc., D.C. App., 189 A.2d at 363, citing Hutchinson v. Chase & Gilbert, 45 F.2d 139 (2d Cir. 1930). Judge Learned Hand, the author of the Hutchinson opinion, subsequently explained the test, stating:
"* * * `presence' demands more than that the local activities shall be continuous and not sporadic; it includes as a second factor an `estimate of the inconveniences which would result from requiring' the corporation `to defend, where it has been sued.' * * * constitutionally it [is] not enough to hold a corporation that it did some continuous business within the state of the forum; the injustice might be too great, if it were compelled to stand trial there merely on that account, and regardless of all attending `inconveniences.' * * *"[4]
*653 Consequently, we are not concerned merely with whether the activities of the corporation are "a little more or a little less," but rather with "the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." International Shoe Co. v. State of Washington, supra, 326 U.S. at 319, 66 S.Ct. at 160, 90 L.Ed. 95.
At the outset we conclude that appellee has such "minimum contacts" with the District of Columbia to bring it within the meaning of that phrase. But as previously noted, we must look further to determine whether jurisdiction may constitutionally be assumed. The following factors have been deemed relevant in such an inquiry:
"The interest of the state in providing a forum for its residents or in regulating the business involved; the relative availability of evidence and the burden of defense and prosecution in one place rather than another; the ease of access to an alternative forum; the avoidance of multiplicity of suits and conflicting adjudications, and the extent to which the cause of action arose out of defendant's local activities * * *." (Citations omitted.)[5]
Examining these factors, we find that none of them operates in appellants' favor. Appellants are not residents of the District of Columbia. Their cause of action did not arise out of appellee's activities within this jurisdiction. Evidence can be produced as easily, if not more easily, in another forum. Since the suit against Southern Railway is no longer pending, we cannot say that the assumption of jurisdiction will avoid a multiplicity of suits.[6] Finally, we do not understand Key v. S. C. Johnson & Son, Inc., supra, the recent decision of Young v. Albert Pick Hotels, U.S.App.D.C., 320 F.2d 719 (1963), or Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511 (1943), the principal case relied upon by appellants, to be contrary to our conclusion. In all those decisions, in addition to minimum contacts, the plaintiffs were residents of the District of Columbia[7] and their causes of action arose out of the defendants' activities in the District of Columbia.[8] The judgment is therefore
Affirmed.
NOTES
[1] Code 1961, § 13-103 provides: "In actions against foreign corporations doing business in the District all process may be served on the agent of such corporation or person conducting its business, or, in case he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, if there be no such place of business, by leaving the same at the place of business or residence of such agent in said District, and such service shall be effectual to bring the corporation before the court.

"When a foreign corporation shall transact business in the District without having any place of business or resident agent therein, service upon any officer or agent or employee of such corporation in the District shall be effectual as to suits growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the said District."
[2] The visit occurred on January 8, 1963, one month prior to the institution of suit.
[3] Appellee sought to counter these assertions in its brief, but its factual contentions are not properly part of the record before us.
[4] Latimer v. S/A Industrias Reunidas F. Matarazzo, 175 F.2d 184, 185 (2d Cir. 1949), cert. denied, 338 U.S. 86, 70 S.Ct. 141, 94 L.Ed. 531 (1949).
[5] Fisher Governor Company v. Superior Court, 53 Cal.2d 222, 1 Cal.Rptr. 1, 3-4, 347 P.2d 1, 3-4 (1959). See also, Developments in the LawState-Court Jurisdiction, 73 Harv.L.Rev. 909, 924, 930-32 (1960).
[6] How each factor is to be weighed in future cases and in what combination with the others is a question we need not presently decide.
[7] Cf. Berry v. Pennsylvania R. Co., 80 N.J. Super. 321, 193 A.2d 569 (1963).
[8] See, e. g., the concurring opinion of Judge Edgerton in Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 136-137, 134 F.2d 511, 518-519 (1943).