84 N.J. Super. 140 (1964)
201 A.2d 97
TACA INTERNATIONAL AIRLINES, INC., A CORPORATION OF EL SALVADOR, PLAINTIFF,
v.
ROLLS-ROYCE, LTD., A CORPORATION OF ENGLAND, ROLLS-ROYCE OF CANADA, LTD., A CORPORATION OF CANADA, ROLLS-ROYCE, INC., A CORPORATION OF DELAWARE, CAPITAL AIRLINES, INC., A CORPORATION OF DELAWARE AND UNITED AIRLINES, INC., A CORPORATION OF DELAWARE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 1, 1964.
*141 Mr. Donald A. Robinson argued the cause for plaintiff (Messrs. Shanley & Fisher, attorneys; Mr. Donald A. Robinson, *142 Mr. Thomas F. Campion, Mr. David S. Cramp, on the brief).
Mr. James C. Pitney for defendants Rolls-Royce, Ltd., and Rolls-Royce of Canada, Ltd., and Rolls-Royce, Inc. (Messrs. Pitney, Hardin & Kipp, attorneys).
Mr. Harold M. Savage for defendants Capital Airlines, Inc. and United Airlines, Inc.
CONKLIN, J.S.C.
These actions involve two suits by plaintiff Taca International Airlines, Inc., for property damage to its Viscount aircraft, which aircraft crashed and was destroyed in Managua, Nicaragua, on March 5, 1959.
The complaints charge negligence and breach of warranty on the part of five defendants, Rolls-Royce, Ltd., hereinafter referred to as "Ltd.," an English corporation; Rolls-Royce of Canada, Ltd., hereinafter referred to as "Canada," a Canadian corporation; Rolls-Royce, Inc., referred to as "Inc.," a Delaware corporation; Capital Airlines, Inc., a Delaware corporation; and United Airlines, Inc., a Delaware corporation.
The first and second counts of the complaints charge Rolls-Royce, Ltd., with negligence in the manufacture and assembly of engine No. 6425. The third and fourth counts allege that in October 1958 the three Rolls-Royce defendants, in connection with their overhaul and repair of the above-mentioned engine, negligently supplied inferior parts, technical advice and information. Capital Airlines is charged with negligently overhauling and repairing said engine in the fifth and sixth counts, while the seventh and eighth counts of the complaint are against United Airlines, which as a result of a merger has assumed Capital's liabilities.
The first action was commenced against the Rolls-Royce defendants by service upon Andrew P. Young and John E. Grillo, employees of Rolls-Royce, Inc., at the "Inc." motor parts depot in West Englewood, New Jersey, on March 5, 1962.
*143 The second action was started on approximately January 6, 1964, by service of the summons and complaint by registered mail upon "Ltd.," and "Canada," at their respective home offices. There is no dispute that the notice by registered mail was received by the respective Rolls-Royce defendants.
Plaintiff has moved to consolidate the actions on the grounds that common questions of law and fact are involved. The court finds that contention to be true and grants plaintiff's motion to consolidate pursuant to R.R. 4:43-1.
Defendants "Ltd." and "Canada" have moved to dismiss the complaint in this action and to quash the alleged service of process upon them pursuant to the provisions of R.R. 4:12-2 on the grounds of lack of jurisdiction, insufficiency of process, and insufficiency of service of process. The question, therefore, which this court must decide is whether it has jurisdiction over "Ltd." and "Canada" in regard to the present suit.
Neither "Ltd." nor "Canada" is directly engaged in business in the State of New Jersey. "Ltd." is an English company which manufactures and sells motor cars, airplane engines, and marine engines. "Canada" is a Canadian corporation engaged in the assembly and manufacture of spare parts for Rolls-Royce products. Its facilities include a manufacturing and overhauling plant and administrative offices in Canada, where it distributes Rolls-Royce motor cars and parts.
Neither "Ltd." nor "Canada" maintains offices in New Jersey, nor do they have any employees within the State. Neither corporation is authorized to do business in New Jersey, nor does either corporation maintain bank accounts in this jurisdiction.
There is no dispute, however, that Rolls-Royce, Inc., does engage in business within the confines of this State. "Inc." maintains a motor parts depot in Englewood, New Jersey. It has a service representative at Newark Airport and also has a service representative in Millville.
Basically, it is the contention of plaintiff that the operations of "Inc." are so interwoven with the operations of "Canada" *144 and "Ltd." so as to make the former the alter ego of the latter two in regard to "Inc's" activities within this State. Plaintiff maintains that the activities of "Inc." are therefore sufficient to subject "Ltd." and "Canada" to the jurisdiction of this court.
We therefore must turn to an examination of the relationship between "Inc." and the other Rolls-Royce defendants. A myriad of facts has been introduced to show the connection between "Inc." and the other Rolls-Royce defendants. The court points to some of those which it finds significant.
As a result of an increased use of Rolls-Royce aero engines by certain American airlines, it was decided in 1956 by the management of "Ltd.," the parent company in the Rolls-Royce structure, that it would be feasible to set up an American subsidiary. Later it was decided that the American subsidiary should also perform certain services in conjunction with Rolls-Royce's automobile engine activities. With the above purposes in mind, Rolls-Royce, Inc., was incorporated in the State of Delaware on May 16, 1957.
"Inc.'s" original capital structure was only $25,000. However, due to several lines of credit established for it with the Hanover Bank, "Inc." was able to commence and continue operations. These lines of credit were guaranteed in all instances by either "Ltd." or "Canada."
Personnel for the "Inc." operations were at the outset drawn from "Canada" and "Ltd." and transferred to "Inc.'s" employ. These employees were given credit for benefits they had accrued with other Rolls-Royce companies.
The board of directors of "Inc." has at all times consisted of trusted "Ltd." and "Canada" personnel. The original board of directors included two "Canada" men, two "Ltd." men, and Philip Gilbert, who was counsel to both "Ltd." and "Canada" in this country. "Ltd." owns the stock of "Canada" which, in turn, is the sole stockholder of "Inc." "Inc." did and still does maintain its own records and bank accounts.
In order to service and advise on matters involving Rolls-Royce aero engines, "Inc." stations its representatives at *145 various airports where it is known that Rolls-Royce engines are in use by commercial or private operators. "Inc.'s" functions are to repair and overhaul said engines and to supply information to operators of Rolls-Royce powered aircraft. Reports of work performed by "Inc.'s" representatives are sent directly to "Canada," which furnishes further advice where it is deemed necessary. The above is done pursuant to an agreement between "Inc." and "Canada," whereby "Inc.'s" compensation is measured by 13 1/2% of the cost of all spare parts and accessories sold in the United States.
In the automobile line, "Inc." by agreement with "Ltd." is the sole importer of Rolls-Royce and Bentley automobiles in the United States. "Inc.," in turn, sells Rolls-Royce vehicles to various Rolls-Royce distributors throughout the United States.
On each Rolls-Royce automobile a three-year parts warranty is given. "Inc." has been charged with approving warranty claims as submitted by the respective distributors and is reimbursed by "Ltd." for warranty service performed by "Inc." on Rolls-Royce automobile engines.
"Inc." personnel receives training at either the "Ltd." school in England or at "Canada's" training school in Montreal when it is considered necessary.
"Inc." has performed other services for the Rolls-Royce group. It acts on behalf of "Ltd." in servicing "Ltd.'s" licenses in the United States. When a large sale of Rolls-Royce automobiles was made to Buckingham Livery, "Inc." at no charge supplied instructional personnel.
"Inc.," on the other hand, has been allowed at all times to use the jealously guarded Rolls-Royce trademark without any agreement to that effect. Similarly, "Inc." at all times has been allowed to use the spare parts facility of "Canada" without any charge.
Defendant, in support of its motion to dismiss the complaint, relies heavily upon Cannon Mfg. Co. v. Cudahy Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1924). In Cannon suit was brought against a Maine corporation in North *146 Carolina. A wholly owned Alabama subsidiary of defendant was engaged in business in North Carolina, and it was on that basis that plaintiff contended that the parent corporation was subject to the North Carolina jurisdiction. The Alabama subsidiary purchased meat products from its parent and in turn sold them to its customers.
The court in Cannon held that the mere doing of business by a subsidiary within the jurisdiction is not sufficient to subject the parent to suit within the state. The court found corporate separateness did exist between the parent and the subsidiary and refused to pierce the corporate veil which existed.
At the time Cannon was decided by the United States Supreme Court, the applicable test of whether a foreign corporation was subject to in personam jurisdiction was the test of presence within the jurisdiction.
Later Supreme Court cases have adopted a new standard in regard to questions of jurisdiction. In International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the court stated that a foreign corporation could be subject to in personam jurisdiction provided it had certain minimum contacts with the forum, so that the maintenance of the suit did not offend traditional notions of fair play and substantial justice.
In the later cases of McGee v. International Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the court further defined its view of the expanding scope of in personam jurisdiction.
The New Jersey courts appear to have adopted the minimum contacts test as the proper standard for determining whether in personam jurisdiction exists. Hoagland v. Springer, 75 N.J. Super. 560 (App. Div. 1962), affirmed 39 N.J. 32 (1962).
In the Hoagland case Springer had a truck-tractor converted to conventional diesel operation in Detroit by Cummins Michigan Co., which was an independent distributor in the Cummins Indiana chain. The engine developed an oil *147 leak, and the purchaser was instructed to have said engine repaired by Cummins Diesel Metropolitan in Newark, New Jersey, which also was an independent distributor affiliated with Cummins Indiana. Springer, the purchaser, was reimbursed by "Michigan" for the repairs performed by Metropolitan. Subsequently, the purchaser was involved in an accident on the New Jersey Turnpike. Springer and the three Cummins defendants were sued as a result of the accident. Service upon "Michigan" and "Indiana" was effected by service on Metropolitan under R.R. 4:4-4(d) and also by registered mail on the Cummins defendants. The court found both "Michigan" and "Indiana" were subject to suit in New Jersey and, therefore, service by registered mail was effective.
The court, looking at the realities of the situation, said "Michigan," "Metropolitan" and "Indiana" were all integral parts of an economic network.
"We cannot disregard the economic realities of the situation exposed by the record in this case. Indiana and its distributors form one, cohesive economic unit. In the pursuit of business profits and their general economic well-being they are all concerned with the successful selling and servicing of Indiana's products, but for whose existence neither the mother company nor its distributors would have any reason for being." (75 N.J. Super., at p. 569)
Cases subsequent to Cannon in the federal courts have found jurisdiction to exist over a parent corporation by virtue of the subsidiary corporation's relationship with the forum state.
In Alfred Hofmann & Co. v. Karl Mayer Erste H., 159 F. Supp. 77 (D.N.J. 1958), the court found that a New Jersey subsidiary's activities within the State were prima facie sufficient evidence to subject the parent German corporation to the jurisdiction of the court. The court found on the facts before it that the service was valid.
Likewise, in Intermountain Ford Tractor S. Co. v. Massey Ferguson Ltd., 210 F. Supp. 930 (D. Utah 1962), certiorari denied 84 S.Ct. 1334 (1964), a Canadian corporation was held subject to jurisdiction in Utah because of its subsidiary's activities *148 within the jurisdiction. The court there found an intermixture of operational control between the Canadian parent corporation and its subsidiary which did business in Utah. Contra, Anderson v. British Overseas Airways Corp., 144 F. Supp. 543 (S.D.N.Y. 1956); Fergus Motors, Inc. v. Standard Triumph Motor Co., 130 F. Supp. 780 (S.D.N.Y. 1955).
Goodman v. Pan American World Airways, 1 Misc.2d 959, 148 N.Y.S.2d 353 (Sup. Ct. 1956), is a case where the New York court found service on a subsidiary was sufficient to subject United Aircraft Corporation to jurisdiction in New York, in a suit arising out of an aircraft accident in Brazil. The court found that the subsidiary existed at the will of the parent and that:
"Its function is to work generally toward the developing of a foreign market for United products, to promote the good will of United and its products in such market, and to serve such market. Thus, it is clear that it performs functions essential to the conduct of the business of United." (1 Misc.2d, at p. 964, 148 N.Y.S.2d, at p. 358)
In view of the concept of jurisdiction inherent in the minimum contacts test, this court does not feel that the Cannon rule is determinative of the case at bar.
The Cannon decision itself is not a constitutional standard. The court in that case pointed out that the question is only whether corporate separation must be ignored in determining the existence of jurisdiction where there is no applicable statute in the state.
Our examination of the "Inc.," "Ltd.," and "Canada" relationship leaves this court with the view that "Inc." is an integral part of the Rolls-Royce economic empire. In reality, the three Rolls-Royce defendants are part of one cohesive economic unit. "Inc." was created to fulfill the needs of "Ltd." within the United States. Divorced from "Ltd." and "Canada," "Inc." would have no purpose for remaining in existence.
*149 Therefore, this court finds "Ltd." and "Canada" are subject to the jurisdiction of this court. We do not feel this decision is inconsistent with the due process clause of the Fourteenth Amendment of the United States Constitution, in that "Ltd.'s" and "Canada's" ties with "Inc." constitute the minimum contacts with this State, requisite to a finding of jurisdiction consistent with the demands of fair play and substantial justice. Service by registered mail on "Ltd." and "Canada" was therefore effective pursuant to R.R. 4:4-4(d).
The court is not unmindful of the essential difference between Hoagland and the case at bar. In Hoagland, the accident occurred and the repair work was performed in the State of New Jersey. In the instant case the accident occurred in Nicaragua, and there is no indication that "Inc." supplied defective parts or faulty advice. However, that, in itself, is not conclusive on the jurisdictional argument, though those points might have merit, were this a motion to dismiss due to forum non conveniens.
In Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the United States Supreme Court held a state court may exercise in personam jurisdiction over a foreign corporation, without violating the due process provision of the Fourteenth Amendment, in a cause of action which did not arise in the state and which does not relate to the corporation's activities within the state.
In a recent New Jersey case, Berry v. Penna. R.R., 80 N.J. Super. 321 (Law Div. 1963), plaintiff purchased a ticket for travel to Georgia from a Pennsylvania Railroad agent in New Jersey. Part of the trip was on Pennsylvania trackage, and the remainder on that of the Southern Railway. Plaintiff was injured in an accident at the station in Georgia, which was on the trackage portion of "Southern." Plaintiff sued both "Pennsylvania" and "Southern" in New Jersey. The court was called upon to decide whether service on "Southern" by registered mail was sufficient to give the court jurisdiction. The court held that "Pennsylvania" was authorized to solicit business in New Jersey on behalf of "Southern" *150 and that this constituted activity on the part of "Southern," sufficient to subject it to New Jersey's jurisdiction. Contra, Glaser v. Pennsylvania R.R., 82 N.J. Super. 16 (Law Div. 1963).
In view of our holding, the court does not have to reach the question of whether the service under R.R. 4:4-4(d) upon "Inc." was effective.
Motion to dismiss the complaint by the defendants Rolls-Royce, Ltd., and Rolls-Royce, Canada, is hereby denied.