601 A.2d 724

STAR VIDEO ENTERTAINMENT, L.P., PLAINTIFF-APPELLANT, v. VIDEO USA ASSOCIATES 1 L.P.; VIDEO USA ASSOCIATES 1(B) L.P.; VIDEO USA ASSOCIATES 2(A) L.P.; VIDEO USA ASSOCIATES 2(B) L.P.; VIDEO USA ASSOCIATES 2(C) L.P.; VIDEO USA ASSOCIATES 2(D) L.P.; VIDEO USA ASSOCIATES 4, L.P.; VIDEO USA ASSOCIATES, INC., NO. 1; VIDEO USA ASSOCIATES, INC., NO. 2; VIDEO USA ASSOCIATES, INC., NO. 2(D); VIDEO USA ASSOCIATES, INC., NO. 4; MARVIN GREENFIELD; NORMAN NICK; JOHN DOES, I THROUGH X, DEFENDANTS-RESPONDENTS, AND VIDEO USA, LTD.; STEVEN CANTOR; AND BRUCE GREENBERG, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued December 4, 1991—Decided January 16, 1992.

---

[1] On the remand, defendant was resentenced to a custodial term of seven years without a period of parole ineligibility. We affirmed that sentence.

Before Judges BRODY, MUIR, Jr.[1] and LANDAU.

*Martin W. Aron* argued the cause for appellants (*Budd, Larner, Gross, Rosenbaum, Greenberg & Sade,* attorneys; *Donald P. Jacobs,* of counsel; *Martin W. Aron,* on the brief).

*Allan H. Klinger* argued the cause for respondents (*Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone,* attorneys; *Allan H. Klinger,* of counsel and on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

This appeal calls for us again to address fact-sensitive circumstances in order to determine whether due process permits New Jersey to subject out-of-state defendants to the jurisdiction of its courts.

Over a period of approximately two years, plaintiff Star Video ("Star"), a distributor of prerecorded videocassettes with headquarters in Jersey City, sold tapes to defendant Video USA, Ltd., a Delaware corporation with principal place of business in Brooklyn, New York. Video USA purchased the tapes on behalf of a series of limited partnerships (sometimes herein referred to as "LPs"), also named defendants herein, which own and operate retail video sales and rental stores throughout the eastern United States. Star was the sole supplier of tape sales and rental inventory for these stores. Pursuant to their agreement, negotiated at Star's New Jersey headquarters, Star invoiced Video USA for tapes ordered and dropshipped them from New Jersey, per Video USA instructions, to the LPs' various stores. By the time the complaint was filed in this matter, Video USA owed $556,000 on its account with Star.

---

[1] Judge Muir, Jr. did not participate in oral argument. However, the parties subsequently consented to participation of a third judge in the determination of this appeal.

Star sued on that account in the Law Division, Hudson County, on September 29, 1989, naming as defendants Video USA, its principals and directors,[2] the limited partnerships [3] and their corporate general partners.[4] In addition to the unpaid account of $556,000, the complaint included claims for unjust enrichment and conspiracy to defraud.

None of the defendants answered the Complaint. In consequence, Star obtained judgment by default against all defendants in November 1989. A few days later, the present appellants [5] moved pursuant to *R.* 4:6–2 to dismiss the Complaint against them for lack of personal jurisdiction, insufficiency of process, and/or insufficiency of service and for a protective order pursuant to *R.* 4:10–3. By supplemental motion, these same defendants ("moving defendants") further sought to vacate the default and default judgments entered.

The parties subsequently agreed by stipulation entered January 30, 1990, to conduct discovery limited to the jurisdictional issue and to reappear before the court at the conclusion of such discovery. Star agreed to refrain from execution on the default judgments in the interim. Months dragged by as plaintiff's

---

[2]Two of the four principals/directors, Steven Cantor and Bruce Greenberg, have never appeared in this matter and have not participated in this appeal. The remaining two, Marvin Greenfield and Norman Nick (also referred to as the "individual defendants"), each were either president or vice-president of all the corporate general partners of each of the LP's, as well as substantial shareholders in Video USA. Greenfield appears to have owned 100% of the shares of at least one LP corporate general partner.

[3]Video USA Associates 1, L.P.; Video USA Associates 1(b), L.P.; Video USA Associates 2(a), L.P.; Video USA Associates 2(b), L.P.; Video USA Associates 2(c), L.P.; Video USA Associates 2(d), L.P.; Video USA Associates 4, L.P.

[4]Video USA Associates, Inc., No. 1; Video USA Associates, Inc., No. 2; Video USA Associates, Inc., No. 2(d); Video USA Associates, Inc., No. 4.

[5]Which include all the named defendants except Video USA, Cantor and Greenberg.

counsel attempted first by multiple requests, and then by court order, to compel discovery.

The parties ultimately appeared again on February 1, 1991, for hearing on defendants' motion to dismiss. The judge rendered his oral decision April 2, finding on the basis of the agency relationship of Video USA to the limited partnerships [6] that the non-resident limited partnerships had purposely availed themselves of the privilege of conducting business with a New Jersey corporation. Since the deliveries of videocassettes were invoiced, reasoned the judge, the LPs knew or should have known that at least some of the tapes delivered to them were coming from a New Jersey source. The judge concluded that the limited partnerships could reasonably have anticipated defending suit in New Jersey. Star correctly points out that the issue of jurisdiction over the limited partnerships is now final as it has not been appealed. *R.* 2:4–2.

All claims against the LP general partners, nonetheless, were dismissed for lack of jurisdiction on the basis of findings that their only connection to the New Jersey forum consisted of their relationship to Video USA. The judge ruled that jurisdiction over the limited partnerships did not in and of itself confer jurisdiction over their incorporated general partners.

The judge likewise determined that Greenfield and Nick's contacts with the State were insufficient to sustain New Jersey's exercise of jurisdiction, finding their only relationship to the forum to be their positions as shareholders of Video USA and officers of the corporate general partners. Rejecting plaintiff's argument that the court should pierce the corporate veil of Video USA to obtain jurisdiction over the individual defendants, the judge ruled that even though there might be a basis

---

[6]The record shows that Video USA's role as to the LPs was not confined to purchase of tapes for the stores. By agreement with each of the corporate general partners, the company provided centralized management for all of the limited partnerships, including selection of store locations, lease negotiations, and training of management personnel.

under the moving papers to hold liable the individual defendants under *alter ego* theory, this was insufficient to confer jurisdiction, and indeed, irrelevant to the issue.

On the basis of the above determinations, the judge also dismissed the claims against all defendants on *forum non conveniens* grounds. He reasoned that adjudication of the case in New Jersey courts would be "manifestly inappropriate" under our decision in *Westinghouse Elec. Corp. v. Liberty Mut. Ins. Co.*, 233 *N.J.Super.* 463, 559 *A.*2d 435 (App.Div.1989), since all parties were amenable to suit in New York and proceeding in New Jersey would fragment the litigation. Dismissal was conditioned on the limited partnerships' consent to New York jurisdiction.

■■ We must reverse the order of dismissal as to the corporate general partners. It is axiomatic that limited partnerships are passive entities which cannot act except through their general partners. *See N.J.S.A.* 42:2A–26, Comment, Revised Uniform Limited Partnership Act Revision Committee (1988). *See also N.J.S.A.* 42:2A–27a; 42:2A–32; *Eule v. Eule Motor Sales*, 34 *N.J.* 537, 542, 170 *A.*2d 241 (1961). Having found that New Jersey has jurisdiction over the limited partnerships, the judge was compelled to find jurisdiction over the general partners as well. *Cf. Wichita Fed. Sav. & Loan Assn. v. Comark*, 586 *F.Supp.* 940, 943 (S.D.N.Y.1984).

■ Moreover, our review of the record and the briefs of counsel persuades us that the finding of no jurisdiction over the individual defendants on the basis of *alter ego* theory must also be reversed. Plaintiff has adduced significant factual issues to support its claim that Video USA and related corporations are but the functional *alter egos* and personal investment vehicles of Greenfield and Nick, issues which are sufficiently supported, particularly when combined with consideration of other

factors,[7] to withstand a motion to dismiss for lack of personal jurisdiction. *See Vespe Contracting Co. v. Anvan Corp.*, 433 *F.Supp.* 1226, 1233, n. 9, 1235 (E.D.Pa.1977). Should later trial of the matter fail to establish the requisites for *alter ego* liability, these defendants may move to dismiss the complaint against them. *See Hough/Loew Associates, Inc. v. CLX Realty Co.*, 760 *F.Supp.* 1141, 1143 (E.D.Pa.1991).

While the trial judge's holding (that *alter ego* theory is only a remedial measure for extension of liability to those parties over whom the court already enjoys jurisdiction) has been a traditional view, *see* 1 *Fletcher Cyclopedia of the Law of Private Corporations* § 41.10 at 614–15 (perm. ed., rev. 1990), more recent cases recognize that such restricted application of the doctrine is logically insupportable: "It would be anomalous, and would defeat the purposes of the law creating substantive liability, to permit a corporate officer to shield himself from jurisdiction by means of the corporate entity, when he could not interpose the same shield as a defense against substantive liability." *Donner v. Tams–Witmark Music Library, Inc.*, 480 *F.Supp.* 1229 (E.D.Pa.1979). *See also Lucas v. Gulf & Western Industries, Inc.*, 666 *F.*2d 800, 806 (3d Cir.1981); *Davis v. Metro Productions, Inc.*, 885 *F.*2d 515, 520–21 (9th Cir.1989).

■ Thus, where appropriate, courts of New Jersey have looked beyond the corporate form to the functional reality behind it. *See, e.g. Taca Int'l Airlines v. Rolls Royce, Ltd.*, 84 *N.J.Super.* 140, 201 *A.*2d 97 (Law Div.1964) (English, Canadian and Delaware-based corporations "one cohesive economic unit" for jurisdictional purposes). *See also Andrulonis v. United States*, 526 *F.Supp.* 183, 188 (N.D.N.Y.1981). If the disputed facts are resolved sufficiently to provide a basis for holding liable the individual defendants under *alter ego* theory, their

---

[7]Among them were defendants' apparent efforts to obstruct legitimate attempts to obtain discovery as to the jurisdictional facts in this matter. *See Vespe Contracting Co. v. Anvan Corp.*, 433 *F.Supp.* 1226, 1233 n. 9 (E.D.Pa. 1977).

presence for jurisdictional purposes cannot be said to be either unfair or unreasonable. After all, fairness is the essential due process inquiry, *Cooke v. Yarrington,* 62 *N.J.* 123, 128, 299 *A.*2d 400 (1973), an inquiry which includes reasonable expectation. *See World–Wide Volkswagen Corp. v. Woodson,* 444 *U.S.* 286, 100 *S.Ct.* 559, 62 *L.Ed.*2d 490 (1980).

In reaching this holding, we are guided by the decisions of the Third Circuit which have addressed the question of application of *alter ego* theory to personal jurisdiction.[8] The decision in *Vespe, supra,* is helpful on this point. According to that case, a plaintiff establishes *in personam* jurisdiction over a non-resident defendant under Pennsylvania's long-arm statute by articulating facts "with sufficient specificity to convince the Court of the non-frivolous nature of its allegations," which facts, if proven as alleged, would give rise to liability. *Id.,* 433 *F.Supp.* at 1233. Observed the *Vespe* court:

> [A]t this juncture [plaintiff] need not offer actual proof [of the alleged conduct] as a prerequisite to the maintenance of *in personam* jurisdiction over the defendants pursuant to [the long-arm statute]. [Plaintiff's] jurisdictional allegations are intertwined with the merits of its substantive ... claim. If [plaintiff] is able to prove its substantive allegations at trial, then arguably it has also simultaneously established *in personam* jurisdiction over the defendants.

*Id.,* 433 *F.Supp.* at 1233, n. 9. In support of its allegations that Video USA and the various partnerships [9] formed an integrated enterprise which the individual defendants control, plaintiff has pointed to the interrelationship of the companies organized by the two men; their positions as officers of the general partners; the pooling of revenues from most of the limited partnerships;

---

[8]Because New Jersey courts may exercise jurisdiction to the outermost limits of Fourteenth Amendment due process, *Charles Gendler & Co. v. Telecom Equip. Corp.,* 102 *N.J.* 460, 469, 508 *A.*2d 1127 (1986), the jurisdictional reach of our courts extends at least as far as the long-arm jurisdiction of other courts as upheld within this Circuit.

[9]To which its brief adds the assorted Mast organizations: Mast Consolidated Corporation; Mast Capitol Corporation; Mast Property Investors; and Mast Credit Corporation.

combined financial statements for groups of limited partnerships;[10] sizable undocumented loans from the two individuals to Video USA, still outstanding and with no collection effort; the interchangeable use of letterhead of various related entities for correspondence to limited partnership investors; the identity of office space; the abrupt severance of the management arrangement between the partnerships and Video USA after institution of this suit and the contemporaneous formation of a not-for-profit corporation to replace it. We are satisfied that these preliminary showings are adequate to sustain New Jersey jurisdiction under the *Vespe* test. *See Lucas v. Gulf & Western Indus., Inc., supra,* 666 *F.*2d at 805; *Restatement (Second) of Conflict of Laws* § 52 (1971).

The result finds support elsewhere. In the Second Circuit, jurisdiction may be predicated on *alter ego* theory where plaintiff demonstrates the entities' common ownership plus one's financial dependency, the other's domination/control, or either's failure to observe corporate formalities. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 *F.*2d 117 (2d Cir.1984). *See also Holfield v. Power Chemical Co.,* 382 *F.Supp.* 388 (D.Md.1974). A showing "that the corporate form was ... used fraudulently, or that the corporate form was disregarded by the related entities themselves" suffices in other cases. *See Gear, Inc. v. L.A. Gear California, Inc.,* 637 *F.Supp.* 1323, 1329 (S.D.N.Y.1986).

■ In ruling that these defendants are amenable to New Jersey jurisdiction through application of *alter ego* theory, we do not preclude plaintiff from developing other facts at trial sufficient to sustain *in personam* jurisdiction over these defendants through their direct activities related to the forum, e.g., solicitation of New Jersey investors in the limited partnerships.

---

[10]One of which, LP 2(d), owned and operated a store in Burlington, New Jersey.

*See Calder v. Jones,* 465 *U.S.* 783, 104 *S.Ct.* 1482, 79 *L.Ed.*2d 804 (1984).

While we are sensitive to the individual defendants' arguments that they have not set foot in New Jersey nor directly participated in consummation of Star's contract with Video USA, exercise of New Jersey jurisdiction over them would not offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington,* 326 *U.S.* 310, 316, 66 *S.Ct.* 154, 158, 90 *L.Ed.* 95 (1945). To the contrary, plaintiff's preliminary showings mentioned above suggest that there were pecuniary and other benefits sought or derived by defendants from the contractual relationship under consideration. Thus, as this State has a legitimate interest in affording relief to an aggrieved corporate citizen through its own courts, "it may well be unfair to allow [the individual defendants] to escape having to account [in New Jersey] for consequences which arise ... from [their interstate activities]." *Burger King v. Rudzewicz,* 471 *U.S.* 462, 473–74, 105 *S.Ct.* 2174, 2183, 85 *L.Ed.*2d 528 (1985). *See also Certisimo v. Heidelberg Co.,* 122 *N.J.Super.* 1, 298 *A.*2d 298 (Law Div.1972), *aff'd sub nom., Van Eeuwen v. Heidelberg Eastern, Inc.,* 124 *N.J.Super.* 251, 306 *A.*2d 79 (App.Div.1973). *Cf. Ketcham v. Charles R. Lister Int'l, Inc.,* 167 *N.J.Super.* 5, 400 *A.*2d 487 (App.Div.1979). "The greater the benefits derived from defendant's contacts with the forum state, the more reasonable it is to require [him] to be subject to the jurisdiction of the forum." *Gendler, supra,* 102 *N.J.* at 473, 508 *A.*2d 1127. *See Lebel v. Everglades Marina, Inc.,* 115 *N.J.* 317, 330, 558 *A.*2d 1252 (1989).

In view of our holding as to jurisdiction, and plaintiff's failure to show great hardship in defending suit where originally venued, dismissal on *forum non conveniens* grounds must also be reversed. *See Starr v. Berry,* 25 *N.J.* 573, 584, 587, 138 *A.*2d 44 (1958); *Westinghouse Elec. Corp. v. Liberty Mut. Ins. Co.,* 233 *N.J.Super.* 463, 559 *A.*2d 435 (App.Div.1989). In actions based on contract, plaintiff's selection of forum will not

be disturbed except in the most exceptional of circumstances, *Amercoat Corp. v. Reagent Chem. & Research, Inc.,* 108 *N.J.Super.* 331, 347, 261 *A.*2d 380 (App.Div.1970), in recognition of the fact that such transactions have "evidential roots in several jurisdictions," *Starr v. Berry, supra,* 25 *N.J.* at 587, 138 *A.*2d 44. The contract sued upon was negotiated in New Jersey. It and the ensuing purchase orders were largely performed in New Jersey. Under such circumstances, there is nothing "manifestly inappropriate" about the forum selected. No element of vexation or harassment, *see Starr v. Berry,* 25 *N.J.* at 583–84, 138 *A.*2d 44, is present in view of the proximity of Hudson County to New York.

Reversed and remanded for trial on the merits.